IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KROGER TEXAS L.P.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00980-BP |
| | § | |
| **GATOR HARWOOD PARTNERS, LLLP,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions for Summary Judgment, Briefs, and Appendices filed by Kroger Texas L.P. ("Kroger") (ECF Nos. 19-21, respectively) and by Gator Harwood Partners, LLLP ("Gator") (ECF Nos. 22-24, respectively); Gator's Response and Brief (ECF Nos. 25, 26); Kroger's Response, Brief, and Appendix (ECF No. 27-29); Kroger's Reply (ECF No. 31); and Gator's Reply and Brief (ECF Nos. 32, 33). Also pending are Gator's Motion to Strike (ECF No. 30); Kroger's Response, Brief, and Appendix (ECF No. 34-36); and Gator's Reply (ECF No. 37). After reviewing the pleadings, summary judgment evidence, and applicable legal authorities, the undersigned **GRANTS** Kroger's Motion for Summary Judgment (ECF No. 19) in **PART** and **DENIES** it in **PART**; **DENIES** Gator's Motion for Summary Judgment (ECF No. 22); and **DENIES** Gator's Motion to Strike (ECF No. 30) as **MOOT**.

**I.    BACKGROUND**

This diversity case involves differing interpretations of a lease between a grocery store tenant (Kroger) and its landlord (Gator). The specific issue in the parties' cross-motions for summary judgment is who—if anyone—has a contractual duty to replace the store's heating, ventilation, and air conditioning ("HVAC system") if the system is beyond repair.

Section 9.2 of the lease explicitly states that the tenant does not have the duty to replace the HVAC system when it is beyond repair, but the section is silent on whether the landlord or neither party must replace the HVAC system when it is beyond repair. The first paragraph of Section 9.2 reads:

> Section 9.2   Tenant's Repairs. Tenant shall keep and maintain (subject to the provisions of Section 9.1, and damage by fire, or other casualty or other cause beyond Tenant's control, structural defects and reasonable wear and tear,) the interior of said premises, including the heating and air conditioning systems whether located in the interior of the leased Premises or not, and the interior plumbing and electrical systems, within the Leased Premises and not used in common with other tenants (except that Tenant shall not be required to replace all or any part of the plumbing, electrical, heating and/or the air conditioning systems as aforesaid if the entire unit or system is beyond repair).

ECF No. 21 at 24.

Neither party seeks an answer to the factual question of whether the HVAC system is, in fact, beyond repair. *See* ECF No. 20 at 19 ("While the issue of whether the HVAC systems are indeed 'beyond repair' under the Lease is a question of fact outside the scope of this Motion…"); ECF No. 23 at 6 ("The Court is not being asked to determine if the conditions for replacement have or have not been met."). Instead, they assert pure matters of contract interpretation in their motions. For the reasons explained below, the Court concludes that Section 9.2 is ambiguous as to whether Gator, or neither party, is required to replace a beyond-repair HVAC system, making its interpretation a question for the jury.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

2

as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc. Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court views summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). Additionally, it resolves factual controversies in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In considering the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242-43. The Court grants the motion only if the movant meets its burden and the nonmovant fails to make the requisite showing of a genuine issue of material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

"Summary judgment is appropriate where the language of the contract is unambiguous." *Cooper Industries, LLC v. Precision Castparts Corp.*, 2016 WL 4939565 (S.D. Tex. Sept. 14, 2016) (citing *Hanssen v. Qantas Airways Ltd.*, 904 F.2d 267, 269 n.3 (5th Cir. 1990)). "Whether a contract is ambiguous is a question of law for the court. If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous." *In re Pirani*, 824 F.3d 483, 493 (5th Cir. 2016). A contract is not ambiguous "merely because the parties disagree on its meaning," as Kroger and Gator do. *Id*. at 493. "Rather, ambiguity exists only if the contract's meaning is uncertain, or if the language is susceptible to two or more reasonable interpretations." *Id.* at 493-94 (internal citations and quotations omitted).

To determine whether the contract is ambiguous, a court can use various interpretive tools. It can "consider the facts and circumstances surrounding a contract, including the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction." *Id.* at 493 (internal citations and quotations omitted). And "[w]hen contractual provisions arguably conflict, Texas courts employ canons of construction as

4

tools to harmonize them." *Id.* at 494. These include rules that "(1) specific provisions control over general provisions; (2) provisions stated earlier in an agreement are favored over subsequent provisions; and (3) the interpretation of an agreement should not render any material terms meaningless." *Id.* (internal citations and quotations omitted).

Courts must avoid rewriting the parties' contract and must only imply covenants under limited circumstances. Texas law generally requires courts to leave contracts where they find them. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language."). Additionally, "Texas law disfavors implied covenants and generally will not look beyond the parties' written contract to imply a covenant unless it is necessary to effectuate the parties' intent as disclosed by the contract as a whole, but not to make the contract fair, wise, or just." *Berry v. Fed. Nat. Mortg. Ass'n*, No. 3:11-CV-1288-L, 2013 WL 1294008, at *4 (N.D. Tex. March 29, 2013) (internal citations and quotations omitted). "An implied covenant is necessary to effectuate the parties' intentions only if the obligation is so clearly within the contemplation of the parties that they deemed it unnecessary to express it." *Id*.

Courts also should not interpret a contract in a way that leads to absurd results. *See, e.g., United States v. Chesser*, No. 4:21-cv-01257-O, 2023 WL 6260010, at *5 (N.D. Tex. Sept. 26, 2023) ("Because the Government's interpretation makes it essentially impossible for the Defendants to even bring non-permanent structures, such as cars, on the Easement, the Court rejects the Government's unreasonable interpretation to avoid construing the Easement in a manner that would lead to absurd results."); *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) ("[U]nder general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results."); *Loeb-Defever v. Mako, LLC*, No. 22-20362, 2023 WL 5611042, at *5 (5th Cir. Aug. 30, 2023) (same). Similarly, courts should "avoid when possible

and proper" interpreting contracts in such a way that renders them "unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

### B. Declaratory Judgment

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or breach of some contractual duty." *Braidwood Mgmt., Inc. v. Equal Emp't Opportunity Comm'n*, 70 F.4th 914, 926 (5th Cir. 2023) (cleaned up). However, declaratory judgments must not eviscerate the concept of ripeness: "when a plaintiff asks for declaratory relief, the court must assess whether an actual or immediate controversy exists between the parties or whether, instead, the controversy remains abstract and hypothetical." *Id.* at 930.

"Federal courts have discretion to grant or refuse declaratory judgment." *8300 Buckeye Delaware LLC v. UPS Supply Chain Solutions*, No. 4:22-cv-00726-O, 2023 WL 7273712, at *13 (N.D. Tex. Sept. 17, 2023) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1992)). "Courts in the Fifth Circuit have declined to adjudicate declaratory judgment actions when the declaration seeks the same relief as other causes of action in the claim." *Id*.

### III. ANALYSIS

#### A. Kroger is entitled to summary judgment that it is not responsible for replacing a beyond-repair HVAC system, but not to summary judgment that Gator is responsible.

Kroger argues that "[w]hile there is no provision in the Lease that explicitly states that Gator has the duty to replace the HVAC systems when they are beyond repair, the Lease must be read to 'give effect to all the provisions . . . so that none will be rendered meaningless.'" ECF No.

20 at 21, quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). It argues that its "duty to repair the HVAC systems under the Lease is therefore explicitly limited" by the language of Section 9.2, implying that this language should not be rendered meaningless. ECF No. 20 at 22; *see also* ECF No. 21 at 24 (lease provision stating that "Tenant shall not be required to replace all or any part of the . . . air conditioning systems as aforesaid if the entire unit or system is beyond repair.").

Kroger is correct that, given this explicit contractual language, it is not responsible for replacing a beyond-repair HVAC system. However, this result does not establish who is responsible for replacing such a system—Gator, or neither party—given Section 9.2's silence on the issue. Therefore, while this language suffices to entitle Kroger to summary judgment on the issue of its duty to replace a beyond-repair HVAC system, it does not settle the issue of whether Gator bears that responsibility.

Kroger next focuses on the interplay between Section 9.2 and Section 9.1, arguing that Section 9.1 places a general duty to repair equipment on Gator, and so Section 9.1 fills the gap left in Section 9.2, meaning that Gator must replace a beyond-repair HVAC system. ECF No. 20 at 22-23; *see also* ECF No. 28 at 11-12. However, a reasonable jury could disagree with Kroger's interpretation of the relationship between Section 9.1 and Section 9.2. In particular, Section 9.1 only addresses repair, not replacement. ECF No. 21 at 23-24. Where, as here, the lease addresses replacement of the HVAC system (*see, e.g.*, Section 8(B)), reference to the duty to repair the system is not controlling.

Kroger next points to Section 14, which requires Gator to insure the property "against loss or damage by fire," arguing that "the allocation of risk of loss under the Lease is Gator's to bear, not Kroger's." ECF No. 20 at 23. To support this argument, Kroger refers to *7979 Airport Garage,*

7

*L.L.C. v. Dollar Rent A Car Systems, Inc*. 245 S.W.3d 488, 500–501 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Kroger later refers to *7979 Airport Garage* as "an example of a court's holistic interpretation of a Lease in a situation where the parties disagree on who bears the duty of replacement." ECF No. 31 at 15. However, a case that addresses insurance against loss or damage by fire seems far afield from the pending case. Furthermore, the allocation of risk in the instant lease is not so obvious that all reasonable juries reviewing the contract holistically would come to the same conclusion about it. Thus, Kroger is not entitled to summary judgment on these grounds.

Kroger next argues that "requiring Gator to replace the HVAC systems when they are beyond repair is the only reasonable and logical interpretation of the Lease, as it avoids the absurdity that arises out of the alternative interpretation that Gator is not so obligated to replace the HVAC systems." ECF No. 20 at 25. However, a reasonable jury could find that not contractually requiring either party to replace a beyond-repair HVAC system is unwise but perhaps not absurd. Thus, Kroger has shown as a matter of law that it is not responsible for replacing a beyond-repair HVAC system, but it has not met its burden under Rule 56 of showing that Gator has that duty. Accordingly, the Court **GRANTS** Kroger's Motion for Summary Judgment (ECF No. 19) in part and **DENIES** it in part.

      **B.**      **Gator is not entitled to summary judgment that Kroger is responsible, or that Gator is not responsible, for replacing a beyond-repair HVAC system.**

Gator argues it is entitled to summary judgment because Section 9.2 of the lease exempts Kroger from a duty to replace a beyond-repair HVAC system only at the end of the lease term, and the term is not yet up. ECF No. 23 at 4, 11. However, nothing in the text of the lease states that Kroger must pay to replace a beyond-repair HVAC system unless it is at the end of the lease term.

Gator's arguments to the contrary are not persuasive. Gator leans heavily on the phrase, "as aforesaid," in Section 9.2, claiming that not only does this phrase implicitly cross-reference

Kroger's general replacement obligations in Section 8(B), but it also implicitly cross-references Kroger's obligation under 8(F) to surrender the premises in good condition. *Id*. at 11. Therefore, according to Gator, Section 9.2 only "prevents Kroger from having to replace the HVAC system upon surrender of the Premises if the entire system is beyond repair. Otherwise, Kroger assumes all repair and maintenance obligations during the term of the Lease, including any required repairs or replacements…" *Id*.

But a reasonable jury could find that the vague, ambiguous phrase, "as aforesaid," does not refer to Section 8(F). As Kroger notes, a reasonable jury could also find that "as aforesaid" only relates back to things that were "aforesaid" within Section 9.2 and does not relate back to Section 8 at all. ECF No. 28 at 16. Therefore, Gator is not entitled to summary judgment on these grounds.

Gator also makes an argument based on silence: "Section 9.2 is silent about any obligation of Landlord for repair or replacement of the HVAC system." ECF No. 23 at 10; *see also* ECF No. 23 at 9 ("Nothing in Section 9.2 imposes any duty upon Gator with respect to the HVAC system."). Similarly, Gator argues that to the extent that the contract shifts the duty to replace a beyond-repair HVAC unit away from Kroger, this does not place an affirmative duty on Gator. ECF No. 23 at 11; *see also* ECF No. 23 at 13 ("Without express language creating an affirmative requirement that Landlord replace the HVAC system, such covenant cannot be implied.").

But Gator is incorrect to assume that all reasonable juries would interpret Section 9.2's silence on Gator's duties in its favor. This is not a foregone conclusion. A reasonable jury could find that Section 9.2 provides one of the rare instances where an implied covenant is "necessary to effectuate the parties' intent as disclosed by the contract as a whole" and is "so clearly within the contemplation of the parties that they deemed it unnecessary to express it." *Berry*, 2013 WL 1294008, at *4. Therefore, Gator's argument from silence does not earn summary judgment.

9

Gator emphasizes Section 8 of the lease, which imposes a general replacement duty on Kroger. ECF No. 23 at 9-10. However, this argument ignores that Section 9.2 carves out beyond-repair HVAC systems from Kroger's general replacement duties. *See Pirani*, 824 F.3d at 494 ("specific provisions control over general provisions."). Similarly, Gator points to Section 9.1 as part of its discussion of Section 8, arguing that "Kroger is required to make all repairs or replacements, excepting only repairs required to be made by Gator pursuant to Section 9.1, and must surrender the Premises in good condition and repair." ECF No. 23 at 10. "Section 8, standing alone, unambiguously requires Kroger to both repair and replace the HVAC system unless Gator expressly assumed that obligation under Section 9.1." *Id.*

But a reasonable jury could find that Section 9.1 creates specific repair-based carveouts from the general rule established in Section 8, and that Section 9.2 creates a specific replacement-based carveout from the general rule established in Section 8 (albeit not one explicitly cross-referenced in Section 8). *See Pirani*, 824 F.3d at 494 (specific controls the general). Therefore, a reasonable jury could disagree with Gator's arguments about the interplay between Section 8, Section 9.1, and Section 9.2.

Gator also makes an argument based on the concept of "special use." It argues that "Section 9.1 also excuses [Gator] from repairs required by [Kroger's] special use of the Premises. Here, the special use is that of a grocery store that requires special HVAC equipment to power Kroger's frozen and refrigerated food and beverage aisles, 'critical portions of its business.'" ECF No. 23 at 10. But since the term, "special use," is left undefined in the lease, a reasonable jury could find that the HVAC system falls outside the "special use" provision, rendering summary judgment inappropriate for Gator on these grounds.

Finally, Gator's reliance on the Fifth Circuit case of *Nadler v. Am. Motor Sales Corp.*, 764 F.2d 409, 415 (5th Cir. 1985) is unavailing. *Nadler* involved a landlord-tenant dispute about an air conditioning unit, and it required the Fifth Circuit

> to harmonize two covenants in a long-term lease agreement covering commercial property. The first covenant obligates the lessee to keep the premises "in good order and condition" during the lease term, and the other demands surrender of the property at termination "in the same condition as when received except for reasonable use and natural wear." [The Court] must determine whether either covenant binds the lessee to repair or replace equipment that barely functions when the lease expires.

*Id.* at 411. The Fifth Circuit held that "the reasonable use and natural wear exception does not excuse [the lessee] from repairing equipment that deteriorates from normal wear and tear during the lease term. The exception, in other words, does not significantly modify the repair covenant." *Id.* at 414.

However, the facts in *Nadler* differ from those in the instant case. The lease at issue relieves Kroger of a duty to replace a beyond-repair HVAC system but does not explicitly place that obligation on Gator. That is not a problem that the court's discussion in *Nadler* helps to solve. Accordingly, the Court **DENIES** Gator's Motion for Summary Judgment (ECF No. 22) on the issue of its liability for replacing a beyond-repair HVAC system.

    **C.**    **The Court denies Kroger's request for declaratory judgment.**

Kroger also seeks declaratory judgment on various points of contract interpretation, each of which is listed with a letter from (a) through (f). ECF No. 20 at 26-27. Point (a) reads, "The Lease requires that, if the Premises' HVAC systems are beyond repair, Defendant must pay for the cost of replacement of the HVAC system." ECF No. 20 at 26. However, this is largely duplicative of the central contract interpretation dispute in the parties' motions for summary judgment, which the Court must submit to the jury. *See 8300 Buckeye*, 2023 WL 7273712 at *13

("Courts in the Fifth Circuit have declined to adjudicate declaratory judgment actions when the declaration seeks the same relief as other causes of action in the claim."). *Id*. Therefore, the Court declines to enter a declaratory judgment on Point (a).

Points (b) through (f) seek declaratory judgment on the Fourth and Eighth Amendments to the lease, as well as the word, "remodel." ECF No. 20 at 26-27. However, Gator acknowledges that these points do not present "actual controversies," and furthermore, Gator no longer appears to argue on these grounds in the briefs surrounding the cross-motions for summary judgment. ECF No. 26 at 20; *Braidwood*, 70 F.4th at 926. Therefore, the Court declines to enter a declaratory judgment on Points (b) through (f), since Gator has essentially conceded these points, and there is nothing left for the Court to declare.

Gator initially sought attorney's fees and costs relating to Kroger's claim for declaratory judgment under the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Section 37.009. ECF No. 23 at 14. However, now that this case has been removed to federal court, the Federal Declaratory Judgment Act applies, instead. *Flanagan v. Chesapeake Expl., LLC*, No. 3:15-CV-0222-B, 2015 WL 6736648, at *4 n.3 (N.D. Tex. Nov. 4, 2015). Now, the parties cannot rely on the Texas Declaratory Judgment Act "to authorize attorney's fees in a diversity case because the statute is not substantive law." *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Furthermore, Kroger claimed that Gator has abandoned its claims for attorney's fees, and Gator has not contested this. ECF No. 31 at 17. Therefore, the Court does not award Gator attorney's fees or costs relating to Kroger's declaratory judgment claims.

### D.     The Court denies Gator's Motion to Strike as moot.

Gator also moves to strike some of Kroger's summary judgment evidence. ECF No. 30. After reviewing Gator's Motion and the evidence at issue, the Court finds that the evidence is not

12

relevant to the matters of pure contract interpretation that the Court considered on the Motions for Summary Judgment. *Id.* at 2. *See Williams v. N. Texas Tollway Auth.*, No. 3:08-CV-1840-G, 2010 WL 2403740, at *5 (N.D. Tex. Apr. 27, 2010), *rec adopted*, 2010 WL 2404186 (N.D. Tex. June 14, 2010). Therefore, since the Court did not rely on this evidence in ruling on either party's motion for summary judgment, the Court **DENIES AS MOOT** Gator's Motion to Strike.

## IV. CONCLUSION

Given the explicit language in Section 9.2 of the lease shifting the responsibility to replace a beyond-repair HVAC system away from the tenant, no reasonable jury could find that Kroger bears such a duty. Therefore, the Court **GRANTS** Kroger's Motion for Summary Judgment (ECF No. 19) on that issue and **DENIES** Gator's Motion for Summary Judgment (ECF No. 22) on that issue.

However, the lease is unclear and thus ambiguous on whether Gator bears that burden. Therefore, the Court **DENIES** summary judgment to both Kroger and Gator on the issue of whether Gator bears that burden.

The Court **DENIES** Kroger's request for declaratory judgment as duplicative of the issues already proceeding to the jury or as no longer constituting actual controversies. The Court **DENIES** Gator's request for attorney fees and costs in conjunction with Kroger's request for declaratory judgment and **DENIES AS MOOT** Gator's Motion to Strike (ECF No. 30).

It is so **ORDERED** on January 17, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

13